Filed 11/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOHN RUSSO INDUSTRIAL SHEETMETAL, INC.,<br><br>    Plaintiff, Cross-defendant and<br>    Respondent,<br><br>v.<br><br>CITY OF LOS ANGELES DEPARTMENT OF AIRPORTS,<br><br>    Defendant, Cross-complainant and<br>    Appellant. | A151729<br><br>(San Mateo County<br>Super. Ct. No. CIV518872) |

John Russo Industrial Sheetmetal, Inc. (doing business as JRI, Inc.; hereafter JRI) contracted with the City of Los Angeles Department of Airports (also known as Los Angeles World Airports; hereafter LAWA), to provide LAWA specialized airport firefighting trucks. Each sued the other for breach of the contract. In a consolidated action, LAWA further alleged JRI violated the California False Claims Act (CFCA), Government Code section 12650 et seq.,[1] with respect to the sale. LAWA was awarded $1 in contract damages, and its CFCA claim was rejected by the jury—as were JRI's claims against LAWA. The court awarded LAWA costs as prevailing party on the contract claims, but awarded JRI attorney fees on the CFCA claim, finding the claim frivolous and harassing. LAWA challenges the fee award.

We conclude JRI "prevail[ed] in the action" under the relevant CFCA fee provision (§ 12652, subd. (g)(9)(B); hereafter section 12652(g)(9)(B)) regardless of its

---

[1] Undesignated statutory references are to the Government Code.

failure to prevail in the action as a whole.  We reject other challenges LAWA presents to the fee award and affirm.

## I. BACKGROUND[2]

"JRI and LAWA entered into a contract for JRI to build and provide four ARFF [(Aircraft Rescue and Fire Fighting)] vehicles for airports owned and operated by LAWA.  JRI provided and LAWA accepted and paid in full for Trucks #3 and #4, but [LAWA] terminated the contract and refused to pay for Trucks #1 and #2 before they were physically delivered to LAWA.  At that time Trucks #1 and #2 were substantially completed, and JRI sought to have LAWA make the contractual payments of approximately $2 million. [¶] . . . LAWA filed a lawsuit against JRI for breach of contract . . . demanding the return of more than $2 million it had paid for the two ARFFs. . . . JRI file[d] this lawsuit for breach of contract against LAWA.  The cases were then subsequently consolidated[, . . .] and the LAWA lawsuit was treated as a cross-complaint. [¶] . . . LAWA amended its cross-complaint to add causes of action against JRI, including a claim for violation of the [CFCA,] . . . assert[ing] that when JRI submitted it[s] invoices for progress payments and final payments on the ARFFs, JRI knew that it was not in compliance with the contract and sought to defraud the government entity LAWA into making payments. [¶] . . . [JRI then] tacked on a cause of action against LAWA for violation of civil rights . . . ."

"LAWA's CFCA claim was based on two [legal] theories:  (1) that JRI fraudulently induced LAWA to enter into the contract, making all subsequent claims for payments violative of the CFCA, and (2) JRI impliedly and falsely certified compliance with applicable contract requirements when it requested progress and final payments."  The CFCA claim survived demurrer and a motion for summary adjudication, but at the summary adjudication stage the court observed that the claim was " 'weak.' "  The court granted in part JRI's motion in limine to exclude evidence LAWA proffered in support of

---

[2] For the relevant factual and procedural background, we quote from the trial court's order awarding attorney fees.

2

the claim. During trial, JRI moved for nonsuit on the claim. LAWA voluntarily dismissed the fraudulent inducement aspect of the claim (and a related fraudulent inducement of contract claim) and the CFCA claim went to the jury solely on the implied certification theory. The jury unanimously found against LAWA on that theory . . . ."

LAWA prevailed only on its cross-claims for breach of contract and enforcement of a performance bond, and the jury awarded LAWA only $1 on those claims, thus "reflect[ing] the conclusion that JRI did not have to give back to LAWA *any* of the progress or final payments that LAWA made." JRI was unsuccessful on all of its claims against LAWA. After entry of judgment, JRI sought attorney fees under the relevant defendant's attorney fees provision of CFCA, section 12652(g)(9)(B), on the ground LAWA's CFCA claim was frivolous and harassing. The court granted the motion but reduced the amount of requested fees.

The court ruled the "CFCA claim has been a 'junk' claim all along. . . . The evidence was overwhelming and uncontradicted that LAWA affirmatively knew that Truck #3 was not built exactly as the contract terms [required, yet] LAWA desperately insisted that it needed an ARFF to avoid a federal shut-down, and . . . was willing to take the non-conforming model—which LAWA inspected before delivery and prior to full payment. LAWA then used Truck #3 at the airports *for years*—without bringing any claim against JRI. [¶] As for Truck #4, it was the subject of pre-delivery and delivery inspections by LAWA prior to progress payments and final payment, and was used at the Ontario Airport until LAWA decided to move it to LAX [(Los Angeles International Airport)]. At LAX, the firefighters didn't like this new model of ARFF and wanted to have configuration changes before any acceptance of Trucks #1 and #2."

The court also found "LAWA's fraudulent inducement theory failed because there was no evidence at all of any reliance by LAWA and no evidence at all of any scienter by JRI. Similarly, as for the . . . implied certification theory, the evidence was undisputed that JRI believed it was entitled to payments when it presented the claims, and the evidence was overwhelming that LAWA did not rely upon JRI in paying the claims because LAWA had the contractual right to and did verify compliance with the contract

3

*before* making progress and final payments. In order to prove the implied certification theory, LAWA would basically have to prove fraud against JRI—the reality is that this was a breach of contract situation, not a fraud. [¶] . . . [¶] LAWA's argument . . . that it had evidence in support of the claim but was barred from presenting such due to rulings on motions in limine is unfounded. . . . The focus of LAWA's argument is that JRI did not give full disclosure on its 'Questionnaire' on the ARFF bid to LAWA. The evidence at trial was that the Questionnaire (a) was not relied upon as LAWA conducted its own investigation of JRI, and (b) was not material because the reality of the situation was that JRI was the one and only supplier offering an ARFF that met the physical specifications in LAWA's bid solicitation. [¶] It had to have been evident to LAWA at some time during this lawsuit—if it wasn't from the start—that the CFCA claim was not meritorious under the facts. Persisting in prosecuti[ng] a claim that you know you don't have evidence to support constitutes harassment and a frivolous claim."

Regarding the "harassment" finding, the court further found that LAWA had " 'upped the ante' " by adding the CFCA claim to the lawsuit, causing the case to "mushroom[] from a simple breach of contract case, albeit for $2 million, into an *unsettleable* war—with the government entity seeking treble damages, while JRI (a family owned business) tacked on a [civil rights claim] seeking punitive damages!" (Italics added.)

## II.    DISCUSSION

The CFCA "is intended to ' "supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities." ' " (*State of California ex rel. Hindin v. Hewlett-Packard Co.* (2007) 153 Cal.App.4th 307, 312, quoting *American Contract Services v. Allied Mold & Die, Inc.* (2001) 94 Cal.App.4th 854, 858.) "In general, the [CFCA] permits a governmental agency, or a qui tam plaintiff bringing an action on behalf of the governmental agency, to recover civil penalties and damages from any person who, for example, knowingly presents to the state or one of its political subdivisions a false claim for payment or approval." (*Hewlett-Packard*, at pp. 312–313.)

4

The CFCA provides:  "[T]he court may award the defendant its reasonable attorney's fees and expenses against the state or political subdivision that proceeded with the action[3] if the defendant *prevails in the action* and the court finds that *the claim was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment*."  (§ 12652(g)(9)(B), italics added.)[4]  In other words, the CFCA incentivizes plaintiffs to pursue potentially meritorious claims for fraud on government entities but penalizes clearly frivolous claims.

" 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' "  (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

A.      *JRI's Prevailing Party Status*

LAWA first argues JRI was not entitled to fees because JRI did not "prevail[] in the action" as required by section 12652(g)(9)(B).  LAWA relies on the trial court's determination that it was the "prevailing party" for purposes of general costs, based on its recovery of at least nominal damages on its breach of contract and performance bond claims.  (See Code Civ. Proc., § 1032, subd. (a)(4) [" '[p]revailing party' includes the party with a net monetary recovery"].)  In awarding fees to JRI, the trial court found that the requirement in section 12652(g)(9)(B) that a defendant "prevails in the action" refers only to success on the CFCA claims and not on the action as a whole.  We agree with the trial court's interpretation.

---

[3] The phrase "proceeded with the action" appears to refer to other provisions in section 12652 that allow government entities to take over conduct of CFCA actions filed by qui tam plaintiffs.  (See § 12652, subd. (c)(6), (7)(D), (8)(D).)  Although LAWA initiated the CFCA cross-complaint itself rather than assuming control of an action filed by a qui tam plaintiff, LAWA does not contend that section 12652(g)(9)(B) is inapplicable to this case.

[4] An almost identical provision applies to actions conducted by a qui tam plaintiff.  (§ 12652, subd. (g)(9)(A).)

"The definition of 'prevailing party' in [Code of Civil Procedure] section 1032 is particular to that statute and does not necessarily apply to attorney fee statutes or other statutes that use the prevailing party concept." (*DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147.) LAWA argues our colleagues in Division Four construed "prevails in the action" in section 12652(g)(9)[5] "according to" Code of Civil Procedure section 1032, subdivision (a)(4) in *State of California ex rel. Standard Elevator Co. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 979–980. That case, however, involved *only* a CFCA cause of action. (*Id*. at pp. 970–971.) This case raises the issue of what constitutes the "action" in section 12652(g)(9) when CFCA claims are *combined* with other claims in a single lawsuit. To answer this question, we first examine the language of the CFCA.

We review questions of statutory interpretation de novo. (*Connerly v. State Personnel Bd., supra,* 37 Cal.4th at p. 1175.) "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.) In reading and interpreting statutory provisions, we are mindful that the

---

[5] The court construed Government Code former section 12652, subdivision (g)(9) (Stats. 1999, ch. 83, § 70). (*State of California ex rel. Standard Elevator Co. v. West Bay Builders, Inc., supra,* 197 Cal.App.4th at p. 972 & fn. 6.)

words are to be given their plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

In our view, when read in context, the term "action" as used in section 12652(g)(9)(B) is logically and reasonably understood as referring specifically to the *CFCA* cause or causes of action brought in a civil lawsuit without regard to other causes of action that may be brought in the same lawsuit. The statute recognizes that government entities may punish or seek relief for false claims through a criminal prosecution, administrative proceeding, or "civil action." (See § 12651, subd. (b)(3).) The CFCA expressly provides that its remedies are cumulative to other legal remedies (§ 12655, subd. (a)) and does not prevent CFCA causes of action from being joined with other statutory, tort, or contract causes of action in a single lawsuit.

Section 12652 governs the conduct of CFCA actions. Many of its provisions govern the respective roles of the government and a private plaintiff in a qui tam lawsuit. (See, e.g., § 12652, subds. (c) & (f) [government authority to assume conduct of, or intervene as a party in, qui tam action], (e) [government authority to dismiss or settle action over qui tam plaintiff's objections].) In these provisions, the statute refers to "the action" or an "action" brought under the CFCA without expressly limiting the term to CFCA causes of action. However, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. There is no apparent reason why the Legislature would have given the government power to take over, dismiss or settle *non-CFCA causes of action* joined with CFCA causes of action in a qui tam lawsuit.[6] Similarly, section 12652, subdivisions (g)(1)(A)–(B), (g)(2), (g)(3),

---

[6] At oral argument, LAWA argued the section 12652 subdivisions that address intervention logically refer to an "action" without limiting the term to CFCA claims because parties intervene in actions not claims. LAWA also argued the phrase "[t]he court shall dismiss an action or claim under this section" in section 12652, subdivision (d)(3)(A) suggests the Legislature understood CFCA claims might be joined with non-CFCA claims in a single lawsuit and thus impliedly directed dismissal of an "action" if only CFCA claims were involved and "claim" if non-CFCA claims were also involved. However, many other subdivisions of section 12652 that do not involve intervention refer to "action" alone, with no "claim" alternative, in contexts where it

7

and (j) govern the allocation of "proceeds of the action or settlement of the claim" to government entities and qui tam plaintiffs.  It would make no sense to allocate recovery of "proceeds of the action" that might flow from non-CFCA causes of action merely because a plaintiff elected to bring them in the same proceeding.[7]  Section 12652's references to an "action" are logically understood as referring only to the CFCA causes of action in a lawsuit.

We believe our reading of the statute is consistent with its legislative purpose. (See § 12655, subd. (c) [CFCA "shall be liberally construed and applied to promote the public interest"].)  The purpose of the CFCA's defendant attorney fee provision, logically, is to " 'deter the bringing of lawsuits without foundation.' " (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 420 (*Christiansburg*).)  The fortuity of whether frivolous, vexatious or harassing CFCA claims have been joined with non-CFCA claims—whether meritorious or nonmeritorious—in a single civil action has no logical relevance to this purpose and therefore should have no effect on a defendant's statutory entitlement to fees.  As the trial court wrote, "the most logical and reasonable interpretation is that fees may be awarded to the party who prevailed on the CFCA claim itself[,] as it does not make sense . . . that statutory fees would or would not be awarded based upon the outcome of *other non-*[*CFCA*] claims."

---

would make no sense for "action" to refer to an entire lawsuit that included both CFCA and non-CFCA claims.  (See § 12652, subds. (b)(3)(A) ["shall assume primary responsibility for conducting the action"], (c)(1) ["[o]nce filed, the action may be dismissed"], (c)(6)(A) ["the action shall be conducted by the Attorney General"], (c)(7)(D)(i) ["the action shall be conducted by the prosecuting authority"], (c)(8)(D)(i) ["the action shall be conducted by the Attorney General"], (c)(8)(D)(ii) ["the action shall be conducted by the prosecuting authority"], (e)(1) ["shall have the primary responsibility for prosecuting the action"], (e)(2)(A) ["state or political subdivision may seek to dismiss the action"], (e)(2)(B) ["state or political subdivision may settle the action"]; see also § 12652, subd. (i) ["[u]pon a showing . . . that unrestricted participation during the course of the *litigation* by the person initiating the action would interfere with . . . the case, . . . the court may . . . impose limitations on the person's participation" (italics added)].)

[7] For example, in this case, LAWA's first amended cross-complaint included causes of action for breach of warranty, common law fraud, and restitution under Business and Professions Code section 17200.

8

LAWA notes that section 12652(g)(9)(B) refers to both "the action" and "the claim" and argues the terms must be construed to have different meanings. (See *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1130 ["[w]hen different terms are used in parts of the same statutory scheme, they are presumed to have different meanings"].) It proposes that "action" refers to the lawsuit as a whole and "claim" refers to a CFCA cause of action. We disagree.

"Claim" is used in two different senses in the CFCA. First, it refers to a *claim* (i.e., request or demand) for money, property or services from the government that is unlawful under the CFCA. (See, e.g., §§ 12650, subd. (b)(1), (2) [defining "claim" in this sense], 12651 [prescribing penalties for a "false or fraudulent claim"].) In section 12652, "claim" is used in this sense in the phrases "false claim(s)" or "falsely claimed." (§ 12652, subds. (c), (g), (j).) Second, "claim" is used to refer to a *cause of action for a violation of the CFCA*. (See § 12652, subds. (c)(1) ["claim for any violation of Section 12651"; "claim brought under this section"], (d)(3)(A) ["an action or claim under this section"; "the action or claim"], (d)(3)(C)(i) ["information on which allegations or transactions in a claim are based"], (g)(1)(A)–(B) ["settlement of the claim"], (g)(2) [same], (g)(9), (j) ["settlement of the claim"]; see also §§ 12654, subd. (e) [statutory litigation privilege inapplicable to "any claim subject to this article"], 12654.5 ["claim of the state or political subdivision"].) As noted, section 12652, subdivision (g)(9) uses "claim" in the latter sense. In section 12652(g)(9)(B), the distinction between "action" as we have construed that term and this second meaning of "claim" makes sense: a defendant who prevails on a CFCA cause of action may recover only those fees incurred *exclusively* to defend against *frivolous* CFCA claims and not for fees incurred to defend against *nonfrivolous* CFCA claims. (See *Fox v. Vice* (2011) 563 U.S. 826, 829 (*Fox*) [in civil rights actions, defendants may recover only those fees they would not have incurred but for the frivolous claims].) In other words, the fee claimant must have prevailed in the CFCA action (i.e., on the CFCA claims) to be eligible for fees, but fees may be recovered only for those CFCA claims that were frivolous.

9

Our reading of section 12652(g)(9)(B) is supported by comparison to the analogous federal False Claims Act (FFCA; 31 U.S.C. § 3729 et seq.). (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1299 ["CFCA 'is patterned on similar federal legislation' and it is appropriate to look to precedent construing the equivalent federal act"].) The FFCA section entitled "Civil actions for false claims" (31 U.S.C. § 3730), uses "action" and "claim" in the same manner as section 12652,[8] including in an almost-identically-worded defendant's attorney fee provision applicable to qui tam actions. (Compare § 12652, subd. (g)(9) with 31 U.S.C. § 3730(d)(4).)[9] As with the analogous CFCA provisions in section 12652, it would make no sense for the federal government to be able to take over, dismiss or settle non-FFCA causes of action joined with FFCA causes of action in a single lawsuit or to be required to share proceeds of non-FFCA causes of action with a qui tam plaintiff.

We have not found federal cases interpreting the relevant terms of the parallel FFCA defendant's attorney fee provision, and the parties cite none. However, we may

[8] Compare, for example, section 12652, subdivisions (a) through (c) (authorizing government or qui tam plaintiff to file false claims action) with title 31 of the United States Code, section 3730(a), (b) ("civil action under this section"; "civil action for a violation of section 3729"; "the action"). Other provisions of the CFCA and FFCA similarly use "action" and "claim" as described *ante*. (Compare § 12650, subd. (b)(1), (2) [defining "claim" in sense of a false claim] with 31 U.S.C. § 3729(b)(2) [same]; § 12651 [defining liability and using "claim" in sense of a false claim] with 31 U.S.C. § 3729(a) [same]; § 12654, subds. (a)–(b) ["civil action under Section 12652" inferably referring to CFCA cause of action] with 31 U.S.C. § 3731(b) ["civil action under [31 U.S.C. §] 3730" inferably FFCA cause of action]; and § 12654.5 ["claim" inferably CFCA cause of action] with 31 U.S.C. § 3731(c) ["claim" inferably FFCA cause of action].)

[9] Title 31 of the United States Code section 3730(d)(4) provides: "If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." The federal defendant's attorney fee provision applicable to actions brought by the government incorporates the provisions of the Equal Access to Justice Act (28 U.S.C. § 2412). (See 31 U.S.C. § 3730(g); *Castañeda-Castillo v. Holder* (2013) 723 F.3d 48, 56–57.)

10

look to federal cases on defendant's attorney fee awards under federal civil rights statutes for guidance, as the FFCA defendant's attorney fee provision "appl[ies] the familiar standards applied under [section 1988 of title 42 of the United States Code]." (*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5* (8th Cir. 2012) 688 F.3d 410, 415.) Fee awards are authorized for "the prevailing party" in "any action" to enforce specified federal civil rights laws (42 U.S.C. § 1988(b)), and the Supreme Court has held a defendant's fee award is authorized if "a court finds that [a] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." (*Christiansburg, supra,* 434 U.S. at p. 422.) The Supreme Court also has held a defendant could recover fees incurred in defending against a frivolous civil rights claim even when other claims in the lawsuit were remanded to state court for resolution. (*Fox, supra,* 563 U.S. at pp. 839–841 ["defendant may recover the reasonable attorney's fees he expended solely because of the frivolous [federal] allegations"]; see *id.* at pp. 830–831; see also *Kohler v. Bed Bath & Beyond of California, LLC* (9th Cir. 2015) 780 F.3d 1260, 1262, 1266–1267 [implicitly accepting that defendant prevailed on federal disability claims for purposes fee-shifting under 42 U.S.C. § 12205, even though other claims remanded to state court; fee award reversed because 8 of 10 claims not frivolous]; *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1047–1048 [award of fees to defendant under 42 U.S.C. § 12205 governed by *Christiansburg*].) That is, the *Fox* court implicitly held the defendant was entitled to fees after prevailing on the civil rights claim even though it was not yet known who would prevail on the action as a whole.

*Fox*'s rationale also provides guidance on the issue before us. In *Fox*, the Supreme Court held that section 1988 of title 42 of the United States Code "serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary. [Citation.] . . . [T]he presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed. [¶] . . . Fee-shifting to recompense a defendant (as to recompense a plaintiff) is not all-or-nothing: A defendant need not show that every claim

11

in a complaint is frivolous to qualify for fees." (*Fox, supra,* 563 U.S. at pp. 834–835.) As Justice Kagan aptly observed in *Fox*, "[I]n the real world, litigation is . . . complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail. Some charges are frivolous; others (even if not ultimately successful) have a reasonable basis. In short, litigation is messy, and courts must deal with this untidiness in awarding fees." (*Id.* at pp. 833–834.)

Like the trial court, we find that *Fox* supports our interpretation of the CFCA attorney fee provision. Thus, we conclude a court may award a defendant fees under section 12652(g)(9)(B) when the defendant prevails on CFCA claims found to be frivolous, even if the plaintiff "prevails" in the action as a whole under Code of Civil Procedure section 1032, subdivision (a)(4).

B.      *Frivolous, Vexatious or Harassing CFCA Claim*

LAWA also argues the court erred in finding its CFCA claim was frivolous and harassing. We reject LAWA's argument that the mere fact its CFCA claim survived preverdict motions demonstrates the claim was not frivolous, vexatious or harassing, and we conclude LAWA has otherwise forfeited any challenge to the court's evidentiary assessment of the claim's merits.

Section 12652(g)(9)(B) authorizes a fee award to an CFCA defendant only if "the court finds that the claim was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." As noted *ante*, we may look to cases applying section 1988 of title 42 of the United States Code for guidance in interpreting this provision. In *Christiansburg*, the Supreme Court explained that " 'meritless' [(i.e., 'frivolous')] is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case . . . . [¶] . . . [I]t is important that a [trial] court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." (*Christiansburg, supra,* 434 U.S. at pp. 421–422.)

12

To argue its CFCA claim was not frivolous, vexatious or harassing, LAWA relies almost entirely on the fact the claim survived demurrer and a motion for summary adjudication before trial, and partially survived motions in limine and nonsuit at trial, before unanimous rejection by the jury. The mere fact a claim survives preverdict motions, however, is not dispositive. A case involving section 1988 of title 42 of the United States Code case is illustrative. In *Hutchinson v. Staton* (4th Cir. 1993) 994 F.2d 1076, the plaintiffs alleged a conspiracy to fix an election. "The court dismissed one [defendant]. As to the remaining defendants, the court ruled that the limitations period had expired for their alleged individual acts, and limited plaintiffs' complaint to the claim of conspiracy. The court remarked that even this portion of plaintiffs' complaint barely survived dismissal. [¶] Following extensive discovery, defendants moved for summary judgment. The court granted summary judgment to three more of the individual defendants, and ruled that [one aspect of the conspiracy claim] was time-barred. The case then went to trial, which lasted fifteen days. During trial, plaintiffs voluntarily dismissed two defendants . . . . At the close of plaintiffs' evidence, the court directed verdicts for all of the remaining defendants, finding that the only evidence of election-rigging was 'purely speculative' and 'mere suspicion.' " (*Id.* at pp. 1078–1079.) The court of appeal held the defendants were entitled to a fee award. (*Id.* at p. 1082.) "Not surprisingly, the district court found it difficult before trial to determine which elements of this theory had some evidentiary foundation, and which were based on mere speculation. Even so, the court gave plaintiffs ample notice that they were skating on thin ice: in denying defendants' motions to dismiss, the court warned plaintiffs that their conspiracy claim had barely survived dismissal. The court gave plaintiffs the benefit of the doubt by allowing their conspiracy claim to go to trial, but this generosity did not negate plaintiffs' responsibility to litigate a factually grounded claim." (*Id.* at p. 1081.)

Here too, the preverdict motions whittled away at LAWA's CFCA cause of action and the court put LAWA on notice at the summary adjudication stage that its CFCA claim was, at best, "weak." That the court allowed the CFCA claim to go the jury on the one remaining theory did not relieve LAWA of responsibility to litigate a factually

13

grounded claim. (See *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 923 [in state employment discrimination case, rejecting argument a claim that survived summary judgment could not be frivolous for purpose of defendant's attorney fees: "[d]eclarations sufficient to create a triable issue in a summary judgment proceeding may, in the crucible of a trial, be revealed to be spurious and the litigant's claim frivolous"].)

LAWA does not seriously contest the trial court's assessment of the evidence presented on its CFCA claim. LAWA's opening brief devotes a three-sentence paragraph and footnote to discussing the factual background and evidentiary landscape of the case, as distinct from its procedural history, and makes only a cursory reference to purported "substantial evidence" in support of its implied certification theory. LAWA briefly cites testimony excluded in limine, related to its voluntarily dismissed fraudulent inducement theory, but does not address the trial court's ruling on the evidence. Although JRI devoted 16 pages of its respondent's brief to reviewing and analyzing the evidence in the case, including a discussion of the excluded testimony, LAWA did not bother to respond with its own review and analysis of the evidence in its reply brief. By failing to discuss all relevant evidence, LAWA failed to meet its burden on appeal to show trial court erred in finding the claim was frivolous and harassing. (See *Hoffman Street, LLC v. City of West Hollywood* (2009) 179 Cal.App.4th 754, 772–773 [appellant bears burden to show trial court error and prejudice]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 ["appellants who challenge the decision of the trial court based upon the absence of substantial evidence to support it ' "are required to set forth in their brief *all* the material evidence on the point" ' "].)

### III.    DISPOSITION

The attorney fee award is affirmed. LAWA shall bear JRI's costs on appeal.

14

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.

A151729

15

Superior Court of San Mateo County, No. CIV518872, Marie S. Weiner, Judge.

Morrison & Foerster, Miriam A. Vogel, Arturo J. González, Derek F. Foran, Nicholas A. Roethlisberger, Elizabeth Balassone, R. Benjamin Nelson and James R. Sigel for Defendant, Cross-complainant and Appellant.

Duane Morris, Oliver L. Holmes, William J. Baron and Justin J. Fields for Plaintiff, Cross-defendant and Respondent.